HIRAM R. DAVIS v. DAVID MUNRO AND WILLIAM
NEENAN.

*Waters and water-courses—Construction of dam —Relative culpability of wrong-doers.*

Where the unlawful act of a plaintiff has contributed to the injury of
which he complains, so far he is remediless, as the Court will not
interfere, when *both* parties commit acts in violation of law, to
determine who is the more culpable. *Gerrish v. Brown,* 51
Me. 253.

So *held,* where plaintiff permitted refuse from his shingle-mill
to float down the stream into defendant's mill-pond, thereby
lessening his supply of water and interfering with his business,
and defendant felled trees into the stream on his own land, and
stopped the refuse, thereby setting the water back upon plaintiff
to such an extent as to interfere with the operation of his mill,
for which injury he brought suit.

Case made from Kent. (Montgomery, J.) Argued April
28, 1887. Decided June 23, 1887.

Case, for obstructing a natural water-course. Plaintiff
assigns error. Affirmed. The facts are stated in the opinions.

*C. G. Hyde (Stone & Hyde,* of counsel), for appellant.

*W. H. Prescott,* for defendants.

CHAMPLIN, J. Plaintiff owned a shingle-mill which was
run by water. Defendant Munro owned a mill below that
of plaintiff, and situated on the same stream. The plaintiff
permitted the refuse from his mill, excepting the sawdust, to
fall into the stream, and float down into the defendant's mill-
pond. Such refuse there accumulated upon the bottom of the
pond, and lessened the supply of water, and interfered with
the operation of the mill. Defendant had cleaned out his
mill-dam, and notified the plaintiff not to put any more refuse

in the stream.   Plaintiff continued to operate his mill, and cast his refuse in the stream, which floated down into the pond of defendant.   To prevent the refuse coming down into the defendand's pond, Munro and the other defendant felled trees into the stream on defendant Munro's land, about 12 rods below plaintiff's mill, which intercepted the refuse placed in the stream by the plaintiff, the combined effect of which was to dam up the water in the stream, and set it back upon the wheel of plaintiff's mill to such an extent as interfered with its running.

This action is brought by plaintiff to recover damages caused by such setting back of the water, and impeding the use of his mill.   The circuit judge finds that,—

"If it had not been for the refuse coming against the brush and tree dams, the injuries which the plaintiff suffered would have been somewhat less."

The circuit judge gave judgment for defendants.

If it be conceded that the defendants had no right to obstruct the stream, and set the water back upon plaintiff's water-wheel, it is equally certain that the plaintiff had no right to cast his refuse into the stream, to the injury of mill-owners or others below.   His own unlawful act having contributed to the injury of which he complains, so far he is remediless, as this Court will not interfere, when both parties commit acts in violation of law, to determine who is the more culpable.   *Gerrish v. Brown,* 51 Me. 256.

We do not find it necessary to examine the conclusions of law reached by the circuit judge, as in any event the plaintiff, upon this record, is not entitled to recover.

The judgment must be affirmed.

CAMPBELL, C. J., and MORSE, J., concurred.

SHERWOOD, J. (*dissenting*).   This is an action on the case for obstructing a natural water-course.   It comes before us, on a case made, upon written findings.

The cause originated in justice's court, and on appeal to the circuit the defendants had judgment, and the proceedings therein we are asked to review.

The record contains only the pleadings, and the findings of the circuit judge.

From these it appears that the plaintiff, on the twenty-ninth day of June, 1886, had a shingle-mill on a small stream in the town of Algoma, in the county of Kent. The defendant Munro had a grist-mill a short distance above him, and a saw-mill about the same distance below, on the same creek; and the three mills were operated by the water in the creek. These waters, when unobstructed, were barely sufficient for the purpose of running the defendant's mill. The plaintiff's mill was so constructed that the refuse from the shingles fell into the stream, and was carried below to the defendant's mill-pond, lessening the supply of water, and filling up the flood-gates of defendant's dam, so as to render the operation of the mill impossible without clearing it out. Defendant Munro requested the plaintiff to desist from allowing the refuse of his shingle-mill to pass down the stream, and he failed to comply with the request. On the twenty-ninth of June thereafter, the defendant Munro directed defendant Neenan to go upon the premises of the former, bordering upon said stream, and at a point 12 rods below the plaintiff's dam, and at another point a few rods below that, and cut and put into the stream a quantity of brush and trees in such manner as to cause the water to flow back in the stream, and submerge a portion of the plaintiff's wheel, to such an extent as to seriously interfere with the running of the plaintiff's mill, and the amount of damage to plaintiff, occasioned thereby previous to the commencement of this suit, was $13.20.

It is also further found by the circuit judge that the purpose of putting the brush and trees into the stream was to

prevent the refuse from the plaintiff's mill from coming down the stream into the defendant's mill-pond.

Upon these facts the learned circuit judge found, as matter of law, that the plaintiff was not entitled to recover.

I am not able to concur in the conclusions reached by Judge Montgomery. Each of the parties had an equal right to make use of the running waters in the stream, and neither could so use it as to injure the other. The right to use the same as a motive power for operating mills and machinery is as old as is the existence of such mills, and one person has no right to make such use of the stream, for the purpose of floatage or motive power, as to injure the rights of another. These rights have always been carefully guarded and protected by the law; and it is now well settled that the riparian rights of an individual, in either of the instances we have mentioned, cannot be infringed without creating liability to the party injured.

In this case the finding shows that the defendants interfered with the natural flow of the water in such manner as to cause it to be thrown back upon the plaintiff's premises, and impair the usefulness of his mill privilege. This was a wrong for which the law furnishes a remedy. The plaintiff resorted to it, and made his case beyond question, and the court should have given him a judgment. It is no excuse for the wrong for the defendants to urge that the plaintiff has been guilty of similar acts upon the same stream, to the injury of the defendants.

If it be claimed, as was done in this case, by the defendants, that what they did was in defense of their rights impaired by the plaintiff, that what was done by plaintiff created a private nuisance, and that they did no more than was necessary to abate it, it is a sufficient answer to say that one trespass cannot be urged as a defense to the commission of another; neither can an individual abate a private nuisance

by the creation of another producing the same or a similar injury to another person offending. The law in such cases furnishes adequate remedies to parties injured, and resort should not be had to such unusual proceedings as were taken by the defendants in this case.

The judgment should be reversed, and a new judgment entered in this Court for $13.20 in favor of the plaintiff.

I am not entirely satisfied with the course pursued by the plaintiff towards the defendants in this matter before bringing suit, and therefore no costs should be allowed.